IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| DAVID F. BRATCHER, JR., | ) | Civil Action No. 3:10-2871-RBH-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | |
| OF SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on December 29, 2006, alleging disability as of June 12, 2006. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). A video hearing was held on October 16, 2009, at which Plaintiff, represented by counsel, appeared and testified. On December 8, 2009, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff could perform.

Plaintiff was thirty-nine years old at the time of the ALJ's decision. He has an eighth grade education, and past relevant work as a saw mill worker. Tr. 24, 111-112, 120-125. Plaintiff alleges

disability due to status post lower extremity crush injury and lumbar degenerative disc disease. Tr. 12, 111.

The ALJ found (Tr. 12-19):

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.  The claimant has not engaged in substantial gainful activity since June 12, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*)

3.  The claimant has the following severe impairments: status post lower extremity crush injury and lumbar degenerative disc disease (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) further restricted by: no climbing, crawling, or balancing; occasional crouching and stooping; the option to sit or stand at will; no exposure to hazards; and, no operation of foot pedals or vehicles.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on October 16, 1970 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 12, 2006 through the date of this decision (20 CFR 404.1520(g)).

The Appeals Council denied the request for review in a decision issued September 9, 2010. Tr. 1-4. Accordingly, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on November 5, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL RECORD

On June 12, 2006, Plaintiff was admitted to the hospital after his legs were caught between two hydraulic presses at work. X-rays revealed a green stick fracture to his right fibula and a possible subtle greenstick fracture to his left fibula. Examinations showed that Plaintiff had good pulses in both feet, minimal swelling, intact sensation, and the ability to move his toes. Plaintiff was released from the hospital on June 15, at which time it was noted that he could be up and about as tolerated with the use of a walker. Tr. 259-265.

On June 18, 2006, Plaintiff was treated at the emergency room for pain in his calves and feet. It was noted he had done well for the first days after his discharge from the hospital, but was experiencing severe pain. Examination revealed that Plaintiff had bruising below his knees, mild edema, tenderness to his lower legs, normal sensation to touch, normal motor function in both legs, and intact circulation. Ultrasound testing showed no signs of blood clots and x-rays were noted to show an acute, non-displaced right fibular fracture. Plaintiff was prescribed different pain medication and advised to stay off his feet until he followed up with his doctor. Tr. 240-250.

On June 22, 2006, Dr. James Yates, Jr., an orthopaedist, examined Plaintiff. It was noted that x-rays of Plaintiff's legs were satisfactory, showing only "minimal" fractures and that Plaintiff could bear weight as tolerated on crutches. Tr. 172. On July 2, 2006, Plaintiff was treated in the emergency room for symptoms of narcotic withdrawal. He said his leg pain had been somewhat manageable. The physician noted that Plaintiff was getting good results from treatment and prescribed pain and other medications. Tr. 236-239. Dr. Yates noted on July 3, 2006, that MRIs of Plaintiff's calves were "basically unremarkable for any significant problem with his legs." He recommended physical therapy and walking with weight bearing with crutches. Tr. 171; see 167.

On July 12, 2006, Plaintiff obtained a second opinion from Dr. A Jay Preslar, III, an orthopaedist. Examination revealed that Plaintiff had intact sensation to light touch, good pulses and capillary refill in both feet, good strength in plantar flexion and dorsiflexion bilaterally, and no evidence of compartment syndrome. Some upper thigh pain was noted, as well as positive straight leg raise testing at 45 degrees on the right and 70 degrees on the left. X-rays showed minimally displaced midshaft fibular fractures of both legs, good alignment, good interval healing, and no complication of the fractures. Dr. Preslar noted that Plaintiff was progressing as expected, and

assured Plaintiff that swelling was normal and would gradually resolve. He recommended aggressive physical therapy and prescribed pain medications. Tr. 167-169. On July 13, 2006, an MRI of Plaintiff's lumbar spine was overall age appropriate with "[n]o acute or subacute compression deformity. Straightening of the lumbar lordosis. Mild disk dehydration and spondylosis at L4-5" Tr. 233-235. On July 28, 2006, Dr. Preslar noted that Plaintiff was making slow improvement and the MRI of his lower back looked good. It was noted that Plaintiff had mild swelling of his right leg and bilateral ankle stiffness. Dr. Preslar opined that Plaintiff should be "much more aggressive with physical therapy" and should be "out of the wheel chair" within two weeks. Tr. 166.

In August 2006, Plaintiff underwent physical therapy. As of August 1, it was noted that Plaintiff could walk twenty feet, but used a wheelchair for community locomotion. The therapist opined that Plaintiff had a good prognosis for reaching his goal of returning to his prior level of function. Tr. 182-183. Plaintiff continued to attend physical therapy through 2006. Tr. 184-210.

On August 2, 2006, Plaintiff went to the emergency room complaining of back pain after running out of medication several days earlier. Examination revealed that Plaintiff was in no acute distress and had intact pulses, intact sensation and capillary refill, no extremity edema or tenseness of the calf compartments, no mid-low-back or midline tenderness to palpation. Pain medication was prescribed. Tr. 230-232.

On August 17, 2006, Plaintiff was examined by Dr. Benjamin Wall, a physical medicine rehabilitation specialist, for complaints of significant pain. Examination revealed that Plaintiff was alert, oriented, and had no mental deficits. He had normal alignment of his back, low back tenderness, an antalgic gait using crutches, limited extension of his back, and the ability to flex forward to touch his fingers to his knees. Straight leg raise testing was negative. Plaintiff had intact

and symmetric motor function, normal reflexes, and intact sensation except for some diminished sensation in his right ankle. Dr. Wall prescribed medications and physical therapy. Tr. 340-342. On August 28, 2006, Dr. Patrick Boylan, in practice with Dr. Wall, examined Plaintiff for complaints of burning leg pain. Examination showed that Plaintiff had symmetric leg reflexes, full strength, and no atrophy or swelling of his legs. An electrodiagnostic study of his legs was normal. Tr. 339.

In Early September 2006, a nurse adjusted Plaintiff's medications after he complained of blisters in his mouth. Plaintiff had an antalgic gait using crutches. Later in September, Dr. Wall wrote that Plaintiff could bear full weight without crutches and was able to wear shoes, and that he had improved lumbar motion with some tightness and pain to palpation. Plaintiff reported that physical therapy helped, but he still had low back pain. Dr. Wall noted that Plaintiff's medications improved his overall function and quality of life without any significant side effects. Tr. 335-336.

On October 11, 2006, Dr. Wall noted that Plaintiff had intact cognition, and no short-term memory deficits. Plaintiff had tight back muscles, but could flex forward until his fingertips were within six inches of his toes and extend normally (albeit with some pain). Dr. Wall adjusted Plaintiff's medications and prescribed a transcutaneous electrical nerve stimulation ("TENS") unit. He opined that Plaintiff "should be able to move to sedentary work with frequent breaks for position changes and stretching as long as he is allowed to continue [physical therapy]." Tr. 216-217, 333-334. After Plaintiff complained in November 2006 that his medications were making him lethargic, Dr Wall adjusted his medications (reduced narcotic medication). It was noted that Plaintiff had an antalgic gait and increased pain with back motion. Tr. 331-332.

On December 7, 2006, Plaintiff reported that his medications helped take the edge off, but he still had pain. Tightness and tenderness in his paraspinal muscles was noted. Dr. Wall adjusted

his medications (increased narcotic medication). Tr. 329-330. In January 2007, Dr Wall's examination revealed that Plaintiff had pain to palpation of his legs and ankles, but no significant edema. Dr. Wall adjusted Plaintiff's medications and suggested that a surgically-placed stimulator might help Plaintiff's pain. Tr. 327-328. In February and March 2007, Dr. Wall adjusted Plaintiff's medications. Tr. 325-326, 323-324.

Later in March 2007, Plaintiff was examined by Dr. Regina Roman, D.O. He complained of low back and lower extremity pain, as well as swelling in his legs at the end of the day. He said he spent much of the day lying down, no longer drove, and did very little walking. He was able to go to the grocery store with his wife twice a week and do activities of daily living. Dr. Roman's examination revealed that Plaintiff was alert, oriented, and in no acute distress, but had slow mentation; his gait was slow, but he had normal stance and posture; he had full range of motion in his knees, hips, and ankles; his low back had some reduced range of motion, but no abnormal curvature, tenderness to palpation, or muscle spasm; and straight leg raise testing was negative. It was noted that Plaintiff was able to get on and off the examination table without difficulty, could slowly heel and toe walk and tandem walk, and could flex his knees to fifty degrees with some pain. Plaintiff's deep tendon reflexes were normal; he had intact pulses; and he had no muscle atrophy, edema, or joint effusion. Dr. Roman thought that Plaintiff might need assistance with funds due to "extensive sedating medications." Tr. 286-289.

On March 29, 2007, Plaintiff reported that his energy level was better since his medication change, with no worsening of pain. Dr. Wall noted that Plaintiff's medications afforded him improved function and quality of life with no significant side effects. Tr. 321-322. This notation concerning Plaintiff's medications was repeated on April 26, 2007. Tr. 319-320.

In May 2007, Plaintiff reported that he benefitted from his medications, but not as much as he would like. Dr. Wall noted that Plaintiff had an appropriate affect, no short-term memory deficits, and low back tenderness and tightness with limited motion. Tr. 317-318. Plaintiff continued to see Dr. Wall in June and July 2007. Tr. 313-316.

On May 7, 2007, Dr. Charles Fitts, a State agency physician, opined that Plaintiff had the physical residual functional capacity ("RFC") to perform medium work. Tr. 290-297. On May 17, 2007, State psychological consultant Dianne Byrd opined that Plaintiff had no medically determinable psychological impairment. Tr. 298.

On June 7, 2007, Plaintiff underwent a psychological evaluation with Dr. John Riley, a psychologist, to determine if he was a good candidate for the surgical implantation of a pain stimulator as recommended by Dr. Wall. Dr. Riley recommended against placement because Plaintiff was still very sedentary, his reported subjective improvement had not translated into any commensurate functional improvement, and he did not report benefit from the TENS unit. Tr. 356-358. The same day, Dr. T. Kern Carlton noted Plaintiff had a somewhat flat affect, a mildly antalgic gait, slightly decrease lumbar range of motion with pain, stiff ankles, and tenderness of his legs. Plaintiff's sensation was intact to pinprick and he had intact symmetrical reflexes, full (5/5) strength, intact pulses, and no pitting edema. Plaintiff was able to walk on his heels and toes with discomfort, but straight leg raise testing was negative. Dr. Carlton opined that placement of the stimulator was reasonable, but also discussed more conservative measures. Tr. 353-356.

On July 30, 2007, Plaintiff was admitted to a four-week chronic pain rehabilitation with physical therapy almost daily. Tr. 350, 379-398, see Tr. 351-352. Dr. Carlton's examination during this program revealed that Plaintiff had no lumbar tenderness, intact sensation, normal temperatures

in his lower extremities, minimal or no swelling, and negative straight leg raise testing. Tr. 367-377. On August 6, Plaintiff was noted to be progressing and was able to do a thirty-minute workout on the treadmill. Tr. 374. Dr. Carlton administered a trigger point injection and nerve block in Plaintiff's back (Tr. 343-344, 372-373), which Plaintiff reported helped his back and foot pain (Tr. 369, 371). On August 23, 2007, Dr. Carlton noted that Plaintiff had completed his functional restoration program. Dr. Carlton wrote that Plaintiff experienced significant gains in function and marked improvement in the swelling of his feet, although he continued to have pain. IQ testing resulted in a verbal IQ score of 67, performance score of 83, and full score of 72, which was an improvement over previous testing. It was recommended that Plaintiff exercise and lose weight. Tr. 347, 348-349, 399.

During this same time period, Dr. Riley noted that Plaintiff was making functional gains and had improved mood and affect. Tr. 359-363. On August 13, Plaintiff told Dr. Riley he exacerbated his pain by driving home (from Charlotte) to Conway, South Carolina, over the weekend to take his son back to school and attend to his home. Tr. 361. Dr. Riley noted that Plaintiff remained active at exercising and improving relaxation. Tr. 360-361. On August 21, 2007, Dr. Riley discussed with Plaintiff "his consideration of appropriate plans and options to return to some type of work, in an effort to ensure his best chances for long-term physical and psychological well[-]being." Dr. Riley also stated he did not see any need for continued psychological assistance. Tr. 359.

On August 27, 2007, Dr. Carlton noted that Plaintiff was tolerating his medications well without side effects. Tr. 366. On September 7, 2007, Dr. Carlton noted that Plaintiff denied any side effects from Methadone other than constipation. Examination revealed good pulses, negative straight leg raise testing, no lumbar tenderness, slightly decreased lumbar range of motion, and nearly full

motion of his ankles and toes. Dr. Carlton opined that Plaintiff had reached maximum medical improvement and assessed impairment ratings of five percent for his low back and fifteen percent for each foot. Tr. 378.

On October 17, 2007, Dr. William Cain, a State agency physician, reviewed the evidence and opined that Plaintiff could perform light exertional work with standing/walking or sitting about six hours each in an eight-hour workday; occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders/ropes/scaffolds; and no exposure to hazards. Tr. 400-407. Dr. Mark Williams, a State agency psychologist, reviewed Plaintiff's records and completed a Psychiatric Review Technique form and a Mental RFC Assessment form on October 24, 2007. He opined that Plaintiff had, at most, moderate mental limitations and retained the ability to understand and recall simple instructions and carry out simple tasks. Tr. 408-425.

Dr. Gregory Kang examined Plaintiff on January 3, 2008. Dr. Kang noted that Plaintiff was alert and oriented, had positive back extension and facet maneuvers on the left, tender left low back muscles, limited lumbar flexion, intact cranial nerves, 5/5 strength, intact sensation, normal reflexes, no color changes, no hair loss, and no swelling of his legs. Dr. Kang adjusted Plaintiff's medications and noted that he was "allowing [Plaintiff] to return to sedentary activities." Tr. 450-451. On January 28, 2008, Plaintiff reported improvement since the medication adjustment with no significant side-effects. Dr. Kang noted that Plaintiff was alert with no signs of cognitive impairment. Plaintiff had decreased range of motion of his lower back, but an intact neurological status. Tr. 449.

On February 25, 2008, Plaintiff reported to Dr. Kang that he had continued pain and some swelling. Examination revealed tenderness of his calves, but no swelling or color changes. Tr. 448. Plaintiff reported he had a rough week with radiating low back pain and difficulty walking and

changing positions on March 24, 2008. Dr. Kang assessed degenerative disc disease of Plaintiff's back and noted that Plaintiff was in some distress, had reduced range of his low back, and no neurological changes. Tr. 447. On April 24, 2008, Plaintiff was noted to be in some distress with poor range of motion of his back, slight swelling of his right ankle and calf, tenderness to palpation, but intact knee and ankle reflexes. Plaintiff reported no side effects from his medications. Dr. Kang recommended an epidural injection. Tr. 446.

On May 22, 2008 Plaintiff reported some relief from his medications without side effects. He was noted to be alert with fluent speech, intact knee reflexes, and decreased range of motion of his low back. Dr. Kang noted, "I don't have much more to offer him. Epidural injections may relieve some pain but again has not been authorized." Tr. 445. Thereafter, Plaintiff underwent two epidural steroid injections in his low back. Tr. 439, 442. In July 2008, Dr. Kang said Plaintiff's pain was better after the injections, but Plaintiff continued to complain of leg pain. Dr. Kang said that he did not have much more to offer Plaintiff other than continued palliative care. Tr. 438.

In August 2008, Plaintiff was noted to have experienced some relief from injections, but still had pain below his knees somewhat relieved by medications. Dr. Kang's examination revealed that Plaintiff had decreased range of motion of his low back, leg tenderness, and no color changes or swelling. Tr. 437. After administering a third epidural injection in Plaintiff's low back in October 2008, Dr. Kang noted in November 2008 that injections had helped and Plaintiff had pretty good pain control with no significant side effects. Tr. 432.

In January 2009, Plaintiff reported he injured his neck and shoulder in an automobile accident. Dr. Kang's examination revealed decreased neck range of motion, muscle tenderness, and an unchanged low back examination. Tr. 431. Plaintiff reported inadequate pain control and

intermittent swelling in his legs in February 2009. He did not have significant medication side-effects. Dr. Kang's examination showed tenderness over Plaintiff's lower legs, decreased range of motion of the low back, and no color changes. Tr. 430. In March 2009, Plaintiff reported better pain control and no medication side effects except for a headache that lasted about an hour. Tr. 429. In April 2009, Plaintiff reported better pain control with some breakthrough pain. Dr. Kang noted that Plaintiff was alert, had fluent speech, painful back range of motion, and had an unchanged lower extremity examination. Tr. 428. In May 2009, Plaintiff reported adequate pain control with some residual pain. Dr. Kang's examination was essentially unchanged. Tr. 427. Plaintiff's attorney provided a form which directed Dr. Kang to circle "Yes" or "No" to the following questions:

1. Does this patient suffer from chronic and severe persistent back, leg, and hip pain, DDD, numbness, tingling, bilateral lower extremities crush injuries, severe depression and anxiety, as a result of his medical conditions?
2. If yes, do these conditions affect his ability to sustain any gainful employment?
3. Would it be reasonable to assume he would miss at least 5-6 days a month due to his medical conditions from any work environment?
4. Have the above restrictions been present since, at least, June 12, 2006, the date the patient last attempted to work)?

Tr. 426. On June 16, 2009, Dr. Kang circled "Yes" as to each of these questions. Tr. 426.

After the ALJ's decision, Plaintiff submitted additional records to the Appeals Council. In July 2009, Plaintiff said his left-sided low back and hip pain returned causing difficulty with walking and daily activities. Dr. Kang noted that the effects of Plaintiff's injection six months earlier had worn off. Examination revealed that Plaintiff was alert and had fluent speech; tenderness, pain, and reduced range of motion in his low back; and altered sensation in his lower extremities without change. Tr. 456. Another injection was performed in August 2009, and it was later noted that the injection helped and Plaintiff did not have significant medication side-effects. Plaintiff was alert and

oriented and had fluent speech, slightly decreased flexion and extension of his back, and tenderness in his calves and tibia. Tr. 455. In October 2009, Plaintiff complained of radiating back pain. Dr. Kang noted that Plaintiff was in moderate distress, used a cane to walk, but had intact cranial nerves, low back tenderness, and no neurological deficits or cognitive impairment. Plaintiff's medications were adjusted. Tr. 454.

## HEARING TESTIMONY

Plaintiff testified that he was hurt at work in June 2006, and continued to have problems with his legs, feet, and back. He described constant pain in his left low back that radiated into his foot and was not completely relieved by medication or lying down. See Tr. 26-31. Plaintiff stated that injections from Dr. Kang caused him to be bedridden for two or three days, and helped only very little. Tr. 35-36. He also stated that his right leg and foot were painful, and he had constant numbness in his legs. Tr. 27-28. Plaintiff complained that sitting put pressure on the lower part of his back and a shooting pain on the right down to his legs. Tr. 29. Plaintiff estimated he could sit no more than fifteen to twenty minutes before having to get up. Tr. 29-30. He also said he had difficulty standing, walking, bending, stooping, squatting, and balancing, and could walk at most fifteen to twenty minutes before having to sit down. Tr. 30-34. He said the most he could lift was a gallon of milk, but even that caused low back pain. Tr. 35. Plaintiff first testified that he would lie down pretty much all day, but later said he could lie down for no more than forty-five minutes before having to get up and change positions. Tr. 31, 36-37.

Plaintiff said that his medication caused side effects including daily headaches and dizziness that came on about ten minutes after he took his medications and lasted about twenty minutes. Tr.

31-32, 33.  He said he could drive if it was an emergency situation, but otherwise did not drive.  Tr. 32-33.  Plaintiff said he had trouble sleeping and was up and down all night.  Tr. 37.

## DISCUSSION

Plaintiff alleges that the ALJ: (1) erred by failing to give adequate weight to the opinion of his treating physician (Dr. Kang); (2) failed to evaluate his IQ and its effect on his ability to engage in sedentary work activity; (3) failed to give proper consideration to his testimony regarding the severity of his symptoms which are caused by medically determinable impairments; and (4) erred by not giving proper consideration to the testimony of the VE that there are no jobs available in the local or national economy that he can perform due to the severity of his mental and physical impairments. The Commissioner argues that substantial evidence[1] supports the final decision that Plaintiff was not disabled within the meaning of the Social Security Act.

A.      Treating Physician

Plaintiff argues that the ALJ erred in failing to accord controlling weight to the opinion of Dr. Kang, his treating physician since 2008.   The Commissioner contends that the ALJ reasonably evaluated Dr. Kang's opinion and discounted it.

---

[1]Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966).  It must do more, however, than merely create a suspicion that the fact to be established exists.  Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount Dr. Kang's opinion is supported by substantial evidence. In part, the ALJ discounted Dr. Kang's opinion that Plaintiff would miss at least five to six days of work per month because it was on a check-off form with no elaboration beyond the "yes" or "no" answer options. Opinions that are supported by an explanation are entitled to more weight than those that are not. See 20 C.F.R. § 404.1527(d)(3)("The better an explanation a source provides for an opinion,

the more weight we will give that opinion."); see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996)(ALJ permissibly rejected psychologist's reports because they were check-off reports that did not contain any explanation of the bases of their conclusions);Mason v. Shalala, 994 F.2d 1058, 1065 (3rd Cir.1993); O'Leary v. Schweiker, 710 F.2d 1334, 1341 (8th Cir.1993).

The ALJ also properly discounted Dr. Kang's opinion as it was inconsistent with his own treatment notes. See 20 C.F.R. § 404.1527(d)(4)("The more consistent the opinion is with the record as a whole, the more weight we will give to that opinion"); Craig, 76 F.3d at 590 (finding that the ALJ properly discounted treating physician's opinion in part because the physician's "own medical notes" did not support the opinion). Dr. Kang's notes generally showed that although Plaintiff complained of ongoing pain, tenderness in his back and legs, and limited range of motion in his back, he was alert and had fluent speech, 5/5 strength, intact cranial nerves, intact sensation, normal reflexes, minimal or no swelling, and no cognitive impairment. See, e.g., 427, 428, 430-432, 444-445, 448-451. His notes consistently showed that Plaintiff was benefitting from his medications and not experiencing any significant medication side-effects. See, e.g., Tr. 430, 432, 445-446, 449.

The ALJ also noted that Dr. Kang previously stated that Plaintiff was allowed to "return to sedentary activities." Tr. 17, see Tr. 451. Plaintiff argues that the "returning to sedentary activities statement from the doctor is not the same as the social security administration[']s definition of sedentary work" because the general definition of sedentary is "to sit or rest a great deal" and the regulatory definition of sedentary work requires standing and walking. Plaintiff's Brief at 7. Although sedentary work may require some standing and walking, however, does not mean that it does not involve sitting "a great deal." The regulatory definition of sedentary work specifically notes that "[a]lthough a sedentary job is one which involves sitting, a certain amount of walking and

standing is often necessary." 20 C.F.R. § 404.1567; see also SSR 83-10 (noting that sedentary work requires only occasional ("from very little up to one-third of the time") walking or standing).[2]

Plaintiff appears to argue that the ALJ erred because he did not "detail" the required factors listed in § 404.1527. While 20 C.F.R. § 404.1527(d) provides that the ALJ will consider these factors, there is not a requirement that the ALJ expressly articulate them in the decision. See 20 C.F.R. § 404.1527(d).[3]

Medical evidence from Plaintiff's other treating and examining physicians also supports the ALJ's decision. In September 2006 (three months after Plaintiff's accident), Dr. Wall noted that Plaintiff was able to wear shoes and bear full weight without crutches (Tr. 16, 335). In October 2006, Dr. Wall noted that Plaintiff should be able to move to sedentary work as long as he was allowed frequent breaks for position changes and stretching, and was allowed to continue physical therapy. Tr. 217. Dr. Wall also noted that Plaintiff benefitted from his medications without significant side-effects. Tr. 322. Although pain and limited range of motion of Plaintiff's back was noted, examinations by Dr. Wall and other medical personnel in his practice revealed that Plaintiff could walk independently; was alert and fully oriented with no mental deficits (due to pain or any other

---

[2]It should also be noted that the ALJ limited Plaintiff to sedentary work with the option to stand and sit at will. Tr. 14.

[3]To the extent Plaintiff is arguing that remand is required because the ALJ did not strictly follow the proper sequence in evaluating Dr. Kang's opinion (by not first determining whether Dr. Kang's opinion was entitled to controlling weight), any error is harmless. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir.1994)(finding an ALJ's error harmless where the ALJ would have reached the same result notwithstanding an error in his analysis); Stout v. Commissioner Soc. Sec., 454 F.3d 1050, 1055 (9th Cir. 2006)(mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless error); Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)(noting the principle of harmless error applies to Social Security disability cases). The ALJ specifically stated that he was according Dr. Kang's opinion little weight and he specifically discussed his reasons for discounting this opinion.

cause); and had normal reflexes, full strength, no atrophy, and no significant swelling. Tr. 216-217, 318, 320, 327-328, 329-330, 332, 339.

Although Dr. Roman noted that Plaintiff had slow mentation, limited back range of motion, and a slow gait, she found that Plaintiff was alert, oriented, and in no acute distress; had normal stance and posture; full range of motion of his knees and hips; normal reflexes; intact pulses; negative straight leg raise testing; no atrophy or edema; and the ability to get on and off the examination table without difficulty, walk on his heels and toes, and tandem walk. Tr. 287-289. Dr. Carlton noted Plaintiff had a mildly antalgic gait, slightly stiff ankles, and leg tenderness, but he had 5/5 strength, intact sensation, symmetrical reflexes, intact pulses, no edema, negative straight leg raise testing, minimal or no swelling, and the ability to walk on his heels and toes. Tr. 354, 367, 372-378. In September 2007, Dr. Carlton opined that Plaintiff was at maximum medical improvement and assessed impairment ratings of only five percent of Plaintiff's low back pain and fifteen percent for each foot. See, e.g., Loving v. Department of Health & Human Servs., 16 F.3d 967, 968 (8th Cir. 1994)(workers' compensation disability rating of five percent, claimant found not disabled); Stephens v. Heckler, 766 F.2d 284, 285 (7th Cir. 1985)(thirty percent workers' compensation disability rating, claimant found not disabled); Waters v. Gardner, 452 F.2d 855, 858 (9th Cir. 1971)(majority of doctors rated the claimant's disability at less than thirty percent, claimant found not disabled).

Objective medical evidence (as cited by the ALJ) also supports the ALJ decision. See Tr. 15, 17. In 2006, an electrodiagnostic study of Plaintiff's legs was normal (Tr. 16, 33), an MRI of his legs was normal (Tr. 171), and an MRI of his lumbar spine revealed "overall age appropriate" findings (Tr. 15, 235).

Additionally, the ALJ's decision is supported by the opinions of the State agency medical and psychological consultants who found that Plaintiff was capable of unskilled light work.  See Tr. 400-407, 408-425.  See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").

B.    Mental Impairment/Listings

Plaintiff argues that the ALJ erred by failing to properly find that his verbal IQ of 67 effected his ability to engage in gainful work activity.  He argues that the ALJ's determination that his chronic brain syndrome (Plaintiff reported to Dr. Riley that he had a penetrating head injury at age 5) was non-severe is an error.  Plaintiff also appears to argue that the ALJ erred in failing to find that he met or equaled the Listing of Impairments, 20 C.F.R. Pt.  404. Subpt. P., App. 1, at § 12.05(C).  He argues that the ALJ erred by finding that his mental IQ was not limiting based on his having worked a job that paid $18 per hour where he has less than a ninth grade education and a Verbal IQ of 67-68.  Plaintiff argues that it was error not to consider how the combination of his physical and mental problems affected his ability to engage in sedentary jobs.  The Commissioner argues that the ALJ's intellectual functioning was reasonably evaluated, the ALJ reasonably evaluated the medical evidence in assessing Plaintiff's RFC, and the ALJ properly considered Plaintiff's combination of impairments.

It is the claimant's burden to show that he or she had a severe impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  A non-severe impairment is defined as one that does not

"significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R.

§ 404.1521(a).  "Basic work activities" are defined as:

> The abilities and aptitudes necessary to do most jobs.  Examples of these include --
>
>> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>>
>> (2) Capacities for seeing, hearing, and speaking;
>>
>> (3) Understanding, carrying out, and remembering simple instructions;
>>
>> (4) Use of judgment;
>>
>> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>>
>> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).  An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

Plaintiff has not met his burden of showing that his chronic brain syndrome was a severe impairment.  Dr. Manning noted that Plaintiff's reading level was higher than expected based on prior IQ testing.  Tr. 13, 348.  Dr. Williams, the State agency psychologist, specifically opined that Plaintiff had borderline intellectual functioning, not mental retardation.  Tr. 420.  Examination by Dr. Wall indicated that Plaintiff was alert, oriented, and had no mental deficits (see, e.g., Tr. 216, 321, 324, 325, 327-328, 329, 332, 335-336, 338). Dr. Riley did not note any problems with Plaintiff's cognition.  See Tr. 359-363.  Despite his IQ scores, Plaintiff was able to perform semiskilled or skilled work for several years in the past .  Tr. 37-38.  Plaintiff testified that he worked as a lead man

with men working under him. Although he did not hire or fire these workers and did not keep records, he said he was the head of them and checked on them. Tr. 39-40.

Even if the ALJ erred in not finding that Plaintiff's mental impairment was severe, such error is harmless here, as the ALJ considered all of Plaintiff's impairments, both severe and non-severe (see Tr. 19-20, 22), during the later steps of his disability determination. Although the Fourth Circuit has not specifically addressed the issue here, other courts have found that an ALJ's failure to find that an impairment was severe was harmless error where the ALJ considered the impairment at the later stages of analysis. See Hill v. Astrue, 289 F. App'x 289, 292 (10th Cir. 2008); Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); Jones v. Astrue, No. 5:07-CV-452-FL, 2009 WL 455414 (E.D.N.C. Feb 23, 2009). Here, the ALJ specifically limited Plaintiff to unskilled work in his hypothetical to the VE. Tr. 39. Plaintiff fails to show any additional limitations based on his mental impairment that are supported by the record.

Plaintiff fails to show that he met or equaled the Listing at 12.05C, which requires that the claimant show evidence of:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. The additional impairment under § 12.05C need not of itself be disabling, since that would make the requirement meaningless. Branham v. Hecker, 775 F.2d 1271, 1273 (4th Cir. 1985). Section 12.05 further provides:

> Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.   The Fourth Circuit has held that § 12.00 "expressly define[s] mental retardation as 'a lifelong condition.'" <u>Branham v. Heckler</u>, 775 F.2d at 1274.[4]

Even assuming that Plaintiff has shown that he had a valid verbal IQ score of 60 to 70 with a physical or other mental impairment imposing additional and significant work-related limitation of function,[5] he fails to show deficits in adaptive behavior in adaptive behavior that initially manifested prior to age 22.

Plaintiff argues that the ALJ erred in relying on his work history to disprove disability. Although the Fourth Circuit has indicated the mere existence of a work history cannot be used to determine if an impairment is disabling when the impairment is already presumptively disabling under a listing, <u>see</u> <u>Luckey v. U. S. Dep't of Health & Human Servs.</u>, 890 F.2d 666, 669 (4th Cir. 1989), that is not the case here.  An ALJ "may decline to accept a claimant's performance [on an IQ test] where the claimant has demonstrated a work history inconsistent with those scores, or where the claimant's performance in IQ testing is depressed ..." <u>Robertson v. Barnhart</u>, No. 4:06cv00022, 2006 WL 3526901, at * 2 (W.D. Va. Dec. 1, 2006)(unpublished).

C.   <u>Credibility</u>

Plaintiff argues that the ALJ erred by not properly evaluating his testimony regarding the severity of his symptoms.  He argues that the reasons given by the ALJ to discount his credibility

---

[4]Additionally, the ALJ specifically considered all of Plaintiff's impairments and found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing. Tr. 14, <u>see</u> Tr. 12-18.

[5]Although the ALJ did not specifically address the Listing at § 12.05C, any failure to do so is harmless error, as Plaintiff fails to show that he met or equaled this Listing.

have been shown to have no bearing on his credibility. The Commissioner contends that the ALJ reasonably evaluated the credibility of Plaintiff's subjective complaints.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered Plaintiff's credibility by using the two-part test outlined above and considering the medical and non-medical record. At step one, the ALJ specifically found that Plaintiff had medically determinable impairments that could have reasonably been expected to produce some of the alleged symptoms. Tr. 15. At step two, the ALJ properly considered the medical and non-medical evidence in determining that Plaintiff's subjective allegations of limitations during the relevant time period were not supported by the weight of the evidence. Tr. 15-18. The ALJ specifically stated that he took Plaintiff's allegations of pain into consideration by reducing his

RFC. Tr. 17-18. The medical record, as discussed above, supports the ALJ's finding. The ALJ did not base his credibility determination on the objective medical evidence alone.

The ALJ specifically considered Plaintiff's response to treatment with medications as an indicator that his symptoms were not as severe as alleged. Tr. 15. The record showed that Plaintiff's pain, while not completely alleviated, responded to medications. Tr. 16-17, see, e.g., Tr. 317 (noting some benefit from medications); 369 (injection helped back for a while); 371 (nerve block helped feet); 427 (adequate pain control); 428 (better pain control); 429 (better pain control); 432 (pretty good pain control); 437 (injection helped back pain, getting some relief with other medications); 438 (back pain better after injection); 445 (getting some relief with medications); 448 (relief with medication); 449 (improved pain control). Additionally, the ALJ properly discounted Plaintiff's credibility based on inconsistencies in information provided by Plaintiff (Tr. 17). See Mickles v. Shalala, 29 F.3d at 930.[6] Contrary to Plaintiff's argument, the ALJ properly analyzed the side-effects of Plaintiff's medications as the record consistently reflected that Plaintiff was not experiencing any significant side-effects. See, e.g., Tr. 320, 322, 336, 366, 429, 430, 432, 445-446, 449.

Citing Hines v. Barnhart, 453 F.3d 559, 565 (4th Cir. 2006, Plaintiff argues that he may rely exclusively on subjective evidence to prove the second part of the credibility test. Plaintiff's reliance on Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006) is misplaced. In Hines, a Fourth Circuit held that, "[h]aving met his threshold obligation of showing by objective medical evidence a condition

_____

[6]The ALJ's decision is also supported by Plaintiff's activities of daily living. See Mastro v. Apfel, 270 F.3d at 179 (claimant's daily activities undermined her subjective complaints). Although Plaintiff testified to reduced activities, the records indicate that he was able to independently care for his personal needs, go to the grocery store with his wife twice a week, and walk for an hour (Tr. 287), do a 30-minute workout on a treadmill (Tr. 374), and travel out of town to take his son to school (Tr. 361).

reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." Id. at 565. The Court, however, still acknowledged that "[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered." Id. at 564; see id. at 565 n. 3. This is not a case where the absence of objective medical evidence of the intensity, severity, degree, or functional effect of pain is determinative of the outcome. Although the ALJ did not find that Plaintiff's subjective complaints and pain were totally disabling, he accepted Plaintiff's subjective symptoms to the extent that they prevented him from performing more than a reduced range of unskilled, sedentary work .

    D.    <u>Hypothetical to the VE</u>

        Plaintiff alleges that the ALJ erred by not accepting the VE's testimony in response to a hypothetical question as to whether there would be any jobs that Claimant could perform assuming that Dr. Kang's limitations with regard to days missed was correct. The Commissioner contends that the ALJ properly found that there were jobs in the national economy that Plaintiff could perform with his RFC, and that the ALJ was not required to accept the VE's response to the additional hypothetical question because it included limitations that the ALJ found were not supported by the record.

    In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989). The

questions, however, need only reflect those impairments that are supported by the record. <u>Chrupcala v. Heckler</u>, 829 F.2d 1269, 1276 (3d Cir. 1987).

Here, the ALJ was not required to include additional limitations proposed by Plaintiff's counsel (Dr. Kang's limitations with regard to the number of days of work Plaintiff would miss) because the ALJ did not find these limitations to be credible and/or supported by the record. <u>See Lee v. Sullivan</u>, 945 F.2d 689, 698-94 (4th Cir. 1991)(noting that a requirement introduced by claimant's counsel in a question to the VE "was not sustained by the evidence, and the vocational expert's testimony in response to the question was without support in the record."); <u>Chrupcala</u>, <u>supra</u>.

## **CONCLUSION**

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered <u>de novo</u>, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, <u>Richardson v. Perales</u>, <u>supra</u>. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion.

<u>Shively v. Heckler</u>, <u>supra</u>.  It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.


Joseph R. McCrorey
United States Magistrate Judge

February 10, 2012
Columbia, South Carolina